[No. 59569-1.   En Banc.   July 15, 1993.]

THE STATE OF WASHINGTON, *Petitioner*, v. EARL JOSEPH ANDERSON, *Respondent*.

*Seth R. Dawson, Prosecuting Attorney,* and *Seth Aaron Fine, Deputy,* for petitioner.

*Rita J. Griffith* of *Washington Appellate Defender Association,* for respondent.

*C. James Frush* on behalf of Washington Association of Criminal Defense Lawyers, amicus curiae for respondent.

SMITH, J. — Petitioner State of Washington seeks review of a decision of the Court of Appeals, Division One, reversing an order of the Snohomish County Superior Court denying the motion of Respondent Earl Joseph Anderson to dismiss a burglary charge against him based upon his claim of violation of his right to a speedy trial under CrR 3.3(d)(4). The Court of Appeals reversed, holding that the CrR 3.3(g)(6) exclusion of time spent by respondent in federal jail or prison did not apply, and that that time must be included in counting the days under his speedy trial right because of the State's failure to act in good faith and with due diligence in seeking return of Respondent Anderson to Washington state jurisdiction to stand trial on the burglary charge. We granted review. We affirm the Court of Appeals.

## STATEMENT OF FACTS

Respondent Earl Joseph Anderson (Respondent) was convicted of second degree burglary in the Snohomish County

Superior Court on May 21, 1987, and given a 22-month sentence which he completed while his first appeal was pending. The Court of Appeals, in an unpublished decision, reversed that conviction because of an error in instructions[1] and remanded the case for retrial.[2] In the interim, Respondent was released into federal custody on unrelated charges. At the hearing in the Snohomish County Superior Court on March 13, 1989, to set the date for retrial following remand, Respondent's attorney appeared and informed the court and prosecutor that Respondent was in federal custody.[3]

Shortly after that hearing, Respondent began a series of efforts to assert his right to a speedy trial. He first filed a demand for speedy trial with the Snohomish County Superior Court on March 23, 1989.[4] Receiving no reply, he filed the demand again on May 18, 1989.[5] Copies were sent to the Snohomish County Prosecuting Attorney's office.[6] Respondent again received no reply. On July 17, 1989, his attorney moved for a new trial date within the time limits prescribed in RCW 9.100, the Interstate Agreement on Detainers (IAD).[7] The State responded that it could not grant relief under the IAD because (a) it had not filed a detainer against Respondent, and (b) the prison authorities where Respondent was located, and not the clerk of the court or prosecuting attorney, were the appropriate officials to receive a demand under the

---

[1]Clerk's Papers, at 70-78.

[2]Clerk's Papers, at 68-69.

[3]Clerk's Papers, at 99. Upon discharge from his 1987 state sentence on July 13, 1988, Respondent was released to the custody of the United States Marshal and eventually transferred to a federal prison in Arizona following federal parole revocation proceedings. Clerk's Papers, at 52, 101-04.

[4]Clerk's Papers, at 66-67.

[5]Clerk's Papers, at 65.

[6]Clerk's Papers, at 65-67.

[7]Clerk's Papers, at 64.

IAD.[8] Respondent's motion for a speedy trial was stricken by the court in August 1989.[9]

On July 27, 1990, Petitioner and Respondent jointly filed a motion for a writ of habeas corpus.[10] Respondent appeared in person with his attorney before the Snohomish County Superior Court on August 17, 1990, at which time trial was set for October 29, 1990.

On October 16, 1990, the Honorable Richard J. Thorpe denied Respondent's motion to dismiss pursuant to CrR 3.3, finding that "[t]he delay caused by application of the provisions of the Interstate Agreement of [sic] Detainers does not constitute a lack of due diligence."[11] Respondent proceeded to trial on October 29, 1990, and was again convicted of burglary in the second degree on November 1, 1990. The Honorable John F. Wilson subsequently on November 6, 1990, sentenced Respondent to 22 months, with credit for the 22 months he had already served.[12] Respondent appealed to the Court of Appeals.

Division One of the Court of Appeals on May 4, 1992, reversed Respondent's conviction, finding that the State had violated his right to a speedy trial under CrR 3.3(d)(4). The court, the Honorable William W. Baker writing, stated:

> [U]nder CrR 3.3(g)(6) we must test the defendant's unavailability under the good faith and due diligence rule. Here, the State does not argue that it did exercise good faith and due diligence to retry the defendant. The State's failure to utilize mechanisms for promptly bringing the appellant to trial con-

---

[8]On December 2, 1989, Respondent sought assistance from the warden at the federal prison in Safford, Arizona, where he was confined, in filing his demand for trial under the IAD. The warden responded that the prison could not assist him because the State of Washington had not filed a detainer against Respondent. Clerk's Papers, at 53-54.

[9]State v. Anderson, 65 Wn. App. 493, 495, 828 P.2d 1161 (1992).

[10]Respondent was in federal custody in the Snohomish County Jail on that date. Clerk's Papers, at 56.

[11]Clerk's Papers, at 51.

[12]Clerk's Papers, at 3-6.

stitutes a lack of due diligence. Accordingly, the period during which the appellant was in federal custody should not be excluded from the computation of the speedy trial period. Thus, because the speedy trial period under former CrR 3.3(d)(4) was exceeded, we reverse. [13]

Petitioner State of Washington (State) seeks review of the 1992 decision of the Court of Appeals reversing Respondent's conviction. This court granted review on October 27, 1992.

## QUESTION PRESENTED

The question presented in this case is whether exclusion of time spent by a defendant in a federal jail or prison from the CrR 3.3(d)(4) speedy trial time limits under CrR 3.3(g)(6) impliedly incorporates a requirement that the State act in good faith and exercise due diligence in attempting to obtain the defendant for trial in the superior court.

## DISCUSSION

### 1. Due Diligence Requirement

Superior Court Criminal Rule 3.3(d)(4) requires that, following remand from an appellate court, incarcerated defendants be brought to trial not later than 60 days after appearance by the defendant or defendant's counsel following the appellate mandate. CrR 3.3(g) excludes certain periods from the 60-day limit in computing the time for arraignment and the time for trial. CrR 3.3(g)(6) specifically excludes "[t]he time during which a defendant is detained . . . in a federal jail or prison . . .".

The CrR 3.3(g)(6) exclusion was first incorporated into the criminal rules in 1980.[14] Prior to that time, the rules simply excluded from the speedy trial period the time during which the defendant was "absent and thereby unavailable for trial".[15]

CrR 3.3(d)(4) was amended on November 7, 1991,[16] but the amendment has no bearing on this case. The former

---

[13] *Anderson*, at 501.

[14] 93 Wn.2d 1131 (effective August 1, 1980).

[15] Former CrR 3.3(f); 87 Wn.2d 1102-03 (1976).

[16] *See* 117 Wn.2d 1106 (1991).

version of CrR 3.3(d)(4), in effect at the time Respondent brought his motion to dismiss for violation of his speedy trial rights, provided:

(d) **Extensions of Time for Trial.** The following extensions of time limits apply notwithstanding the provisions of section (c):

. . . .

(4) *Retrial After Appeal.* If a cause is remanded for trial after an appellate court accepts review, the defendant shall be brought to trial not later than 60 days after that appearance by or on behalf of the defendant in superior court . . . which next follows receipt by the clerk of the superior court of the mandate or other written order, if . . . the defendant is detained in jail, or not later than 90 days . . . if the defendant is thereafter released . . ..

CrR 3.3(g)(6) (not amended in 1991) provides:

(g) **Excluded Periods.** The following periods shall be excluded in computing the time for arraignment and the time for trial:

. . . .

(6) The time during which a defendant is detained in jail or prison outside the state of Washington or in a federal jail or prison and the time during which a defendant is subjected to conditions of release not imposed by a court of the State of Washington[.]

CrR 3.3(i) (not amended in 1991) provides:

(i) **Dismissal With Prejudice.** A criminal charge not brought to trial within the time period provided by this rule shall be dismissed with prejudice.

Prior to the 1980 amendment, this court had read into the speedy trial rule a requirement that the State demonstrate "good faith and diligent efforts to obtain the availability of the defendant" for trial before the "unavailability" extension of speedy trial limits under CrR 3.3 could be used. *State v. Peterson.*[17] In *State v. Peterson, supra,* the prosecuting attorney failed to note a preliminary hearing that would have resulted in a timely trial date for the defendant. The defendant, who was in federal prison, several times sought disposition of the state charges. In answering defendant's motion to

---

[17] 90 Wn.2d 423, 428, 585 P.2d 66 (1978).

dismiss for violation of the speedy trial rule, the prosecutor responded that the defendant was unavailable because of federal incarceration. In affirming dismissal by the trial court of charges against the defendant based on the State's failure to timely bring the defendant to trial, this court stated:

> [U]nder CrR 3.3(f) the speedy trial time limits applicable to a defendant who is "absent and thereby unavailable for trial" do not run until the defendant is actually present. However, unavailability as established under this rule can be shown only if the prosecution demonstrates good faith and diligent efforts to obtain the availability of the defendant. . . .
>
> [A] defendant cannot be considered "unavailable" for purposes of CrR 3.3(f) if his whereabouts are known and reasonable efforts are not taken to obtain his presence in the county wherein the charges are pending. If the State fails to exercise reasonable efforts in obtaining the defendant's presence, the time periods shall not "accrue anew" within the meaning of CrR 3.3(f). . . .
>
> There has been no showing of reasonable efforts here.[18]

In rejecting the State's arguments, this court cited its opinion in *State v. Williams*[19] for its "good faith and diligent efforts" requirement. *State v. Williams, supra,* relied upon the *ABA Standards Relating to Speedy Trial* (Approved Draft, 1968) as a basis for implying a "due diligence" requirement under the speedy trial rule.[20]

The due diligence requirement is also consistent with federal authority, which requires the State to make a diligent and good faith effort to secure the presence of an accused from another jurisdiction if a mechanism is available to do so.[21] The IAD, RCW 9.100, is such a mechanism.

After the 1980 amendment to the speedy trial rule, this court has not since ruled on the requirement that prosecutors exercise due diligence in attempting to bring to trial

---

[18](Citations omitted.) *Peterson*, at 428 (quoting *State v. Hattori*, 19 Wn. App. 74, 78-79, 573 P.2d 829 (1978)).

[19]87 Wn.2d 916, 557 P.2d 1311 (1976).

[20]*Williams*, at 920.

[21]*See Dickey v. Florida*, 398 U.S. 30, 37-38, 26 L. Ed. 2d 26, 90 S. Ct. 1564 (1970); *Smith v. Hooey*, 393 U.S. 374, 383, 21 L. Ed. 2d 607, 89 S. Ct. 575 (1969).

defendants who are in out-of-state or federal jails or prisons. In *State v. Pacheco*,[22] though, we did apply a "good faith and due diligence" requirement to the CrR 3.3(g)(2) exclusion for time spent in "[p]reliminary proceedings and trial on another charge".[23] This court in *State v. Greenwood*[24] approved a requirement that prosecuting attorneys act in good faith and with due diligence in attempting to bring absent defendants to trial pursuant to CrR 3.3(c)(1) and (4).

The Court of Appeals has issued five decisions, including the opinion in this case, concerning the consequences of trial delay because of a defendant's confinement in an out-of-state or federal jail or prison. Some of these decisions may appear to be in conflict, but actually are distinguishable on their facts.

In *State v. Newcomer*,[25] the Court of Appeals, Division Three, excluded time spent in an out-of-state prison by the defendant from calculation of his speedy trial time. Using a constitutional analysis, the court excluded time spent by the defendant in the Oregon prison system because he had requested that Washington withdraw the detainer it had filed against him. Finding no prejudice to the defendant, the Court of Appeals held that the time he spent in an Oregon prison would not be counted against the speedy trial period because of the State's delay in bringing him to trial at his own request. The court noted that the case did "not involve compliance with CrR 3.3 because CrR 3.3(g)(6) excludes the time during which a defendant is detained in jail or prison outside Washington."[26]

In *State v. Carmichael*,[27] the court interpreted the CrR 3.3(g)(6) exclusion strictly, refused to consider the defend-

---

[22]107 Wn.2d 59, 726 P.2d 981 (1986).

[23]*Pacheco*, at 64-65.

[24]120 Wn.2d 585, 845 P.2d 971 (1993).

[25]48 Wn. App. 83, 737 P.2d 1285, *review denied*, 109 Wn.2d 1014 (1987).

[26]*Newcomer*, at 86.

[27]53 Wn. App. 894, 771 P.2d 364, *review denied*, 113 Wn.2d 1001 (1989).

ant's claim of inordinate delay, and excluded all time spent by defendant in a Nevada prison. Authorities in this state had not intended to prosecute the defendant prior to his attempted escape in Nevada and return to Washington authorities.

In *State v. Pizzuto*,[28] the Court of Appeals, Division One, held that a "due diligence" requirement attaches to the CrR 3.3(g)(6) exclusion of time from the speedy trial rule where a defendant is unavailable because of imprisonment in another state. The court ruled, however, that Washington authorities did not violate the due diligence requirement in delaying the defendant's trial on charges in this state because it had subordinated its extradition request to that of Idaho.[29]

The Court of Appeals, Division One, again applied the "due diligence" requirement to a CrR 3.3(g)(6) exclusion in *State v. Syrotchen*,[30] and found that prosecutorial delay in lodging a detainer against the defendant met that test.

The Court of Appeals most recently applied the "due diligence" requirement to CrR 3.3(g)(6) in its decision in this case.[31]

Petitioner State argues that because the speedy trial exclusions were amended in 1980 from the more general concept of "unavailability" of a defendant to specific instances of unavailability, such as the time when a defendant is detained in an out-of-state or federal jail or prison, the holding in *State v. Peterson, supra*, is not current, and this court should not read a "due diligence" requirement into the rules. The Court of Appeals rejected this argument, finding that a "due diligence" requirement was supported by its own precedent,[32] strong

---

[28]55 Wn. App. 421, 778 P.2d 42, *review denied*, 113 Wn.2d 1032 (1989).

[29]*Pizzuto*, at 432.

[30]61 Wn. App. 261, 266-67, 810 P.2d 64, *review denied*, 117 Wn.2d 1014 (1991).

[31]*Anderson*, at 501.

[32]*State v. Pizzuto, supra.*

public policy underlying the speedy trial rule, and the American Bar Association standards addressing the issue.[33]

## 2. Interstate Agreement on Detainers

Washington State is a party to the Interstate Agreement on Detainers, codified at RCW 9.100. Under the IAD, which the State could have used in this case, when Washington has charges pending against prisoners held in a penal or correctional institution of another signatory jurisdiction, it may file a request with the detaining authority that the prisoner not be released prior to resolution of the Washington charges. After a detainer is filed, a prisoner may then demand, through the prison warden, that Washington bring the prisoner to trial. Trial must commence within 180 days following the prisoner's demand.[34]

The IAD does not require Washington's prosecuting authorities to file a detainer against a prisoner with an outstanding charge in this state. Use of the IAD by defendants to exercise their speedy trial rights must therefore depend upon the optional use of the IAD by prosecuting authorities. In this case, Respondent could not initiate the process for his return for trial on the Snohomish County charge because the prosecuting attorney had not filed a detainer against him with federal authorities.

Respondent, joined by amicus curiae Washington Association of Criminal Defense Lawyers, argues that "due diligence" would have required the prosecuting attorney to file a detainer against him, thus affording Respondent the opportunity to demand a speedy trial. Petitioner State argues that grafting a due diligence requirement onto the federal or out-of-state imprisonment exclusion under CrR 3.3(g)(6) would render meaningless the 180-day trial limit under the IAD. The difference in time limits for trial between the IAD and

---

[33]*See* 2 American Bar Ass'n, *Standards for Criminal Justice*, Std. 12-3.1 (2d ed. 1986).

[34]RCW 9.100.010.

CrR 3.3 is not at issue in this case.[35] Instead, the issue is whether prosecuting attorneys may freely decline to utilize the provisions of the IAD to file detainers against defendants in out-of-state or federal jails or prisons, thus depriving defendants of their mechanism for demanding a speedy trial and availing themselves of the CrR 3.3(g)(6) exclusion from the speedy trial rule.

This court in *State v. Peterson, supra,* addressed the interrelationship of the IAD with speedy trial requirements, stating:

> We view RCW 9.100 as a statute which will assist prosecuting authorities to obtain the presence of a defendant held in facilities over which they have no control in other cooperating jurisdictions. It does not, however, relieve prosecutors from the obligation to comply with CrR 3.3 time limits and they must use all reasonable diligence to obtain the presence of the defendant within those time limits. If, however, the request has been made for the defendant's presence as soon as reasonably practicable and the cooperating jurisdiction delays unreasonably in delivering the defendant, he would be "unavailable" within the meaning of [former] CrR 3.3(f). The time under CrR 3.3 would then begin to run again only upon actual presence of the defendant and, practically speaking, the prosecutor often would be subject only to the time limitations contained in RCW 9.100.[36]

The purposes behind the IAD and the "due diligence" requirement are the same. Delay in bringing a matter to trial can result in substantial prejudice to defendants, including lost opportunities to serve at least partially concurrent sentences, potential for increased duration of imprisonment under the sentence the defendant is presently serving, and diminished ability to prepare for trial, including inability to consult with counsel and problems of stale evidence.[37]

---

[35]CrR 3.3(d)(4) requires that a defendant be brought to trial within 60 or 90 days following defendant's first appearance after an appellate remand. In contrast, the IAD requires that a defendant be brought to trial within 180 days following a demand for disposition of charges. RCW 9.100.010, article III. The delay in prosecuting Respondent following his attorney's first appearance after remand, from March 13, 1989, to October 29, 1990, was 622 days, greatly in excess of the 180-day IAD limits.

[36]*See Peterson,* at 431.

[37]*See Anderson,* at 498 (citing *Smith v. Hooey,* 393 U.S. at 378-79).

The American Bar Association recommends that prosecuting authorities be required to extradite untried defendants in a timely fashion or file detainers so that defendants may exercise their speedy trial rights.[38] The ABA's *Standards for Criminal Justice*, Std. 12-3.1, provides that:

Standard 12-3.1. Prosecutor's obligations; notice to and availability of prisoner

To protect the right to speedy trial of a person serving a term of imprisonment either within or without the jurisdiction, it should be provided by rule or statute and, where necessary, interstate compact that:

(a) if the prosecuting attorney knows that a person charged with a criminal offense is serving a term of imprisonment in a penal institution of that or another jurisdiction, he or she must promptly:

(i) undertake to obtain the presence of the prisoner for trial; or

(ii) cause a detainer to be filed with the official having custody of the prisoner and request the official to so advise the prisoner and to advise the prisoner of his or her right to demand trial;

(b) if an official having custody of such a prisoner receives a detainer, the official must promptly advise the prisoner of the charge and of the prisoner's right to demand trial. If at any time thereafter the prisoner informs such official that the prisoner does demand trial, the official shall cause a certificate to that effect to be sent promptly to the prosecuting attorney who caused the detainer to be filed;

(c) upon receipt of such certificate, the prosecuting attorney must promptly seek to obtain the presence of the prisoner for trial; and

(d) when the official having custody of the prisoner receives from the prosecuting attorney a properly supported request for temporary custody of such prisoner for trial, the prisoner shall be made available to that prosecuting attorney (subject, in cases of interjurisdictional transfer, to the traditional right of the executive to refuse transfer and the right of the prisoner to contest the legality of the delivery).

■ We believe the *Standards for Criminal Justice* well articulates the policy which should apply in cases where a defendant is subject to trial in this state, but is detained in an out-of-state or federal jail or prison to the knowledge of

---

[38]2 American Bar Ass'n, *Standards for Criminal Justice*, Std. 12-3.1 (2d ed. 1986).

state prosecuting officials. Standard 12-3.1 imposes an obligation of good faith and due diligence upon prosecuting officials in bringing the defendant to trial.

### 3. Summary and Conclusions

■ There is no legislative history to determine whether we purposely omitted a good faith and due diligence requirement from amendments to CrR 3.3(g)(6). But the policy expressed in the *Standards for Criminal Justice*, our cases prior to amendments to the rule, and our recent decision in *State v. Greenwood*[39] lead us to the conclusion that fundamental fairness requires that Washington prosecuting authorities act in good faith and with due diligence in bringing a defendant to trial in this state once it has been brought to their attention that the defendant "is detained in jail or prison outside the state of Washington or in a federal jail or prison" and the defendant is "subjected to conditions of release not imposed by a court of the State of Washington". CrR 3.3(g)(6).

Good faith and due diligence requires that Washington prosecuting authorities undertake to obtain the presence of a defendant for trial in this state by extradition or interstate compact. The Interstate Agreement on Detainers should be utilized for filing detainers so that defendants may avail themselves of demands for speedy trial. Failure of the State to do this results in inapplicability of the exclusion from computation of the speedy trial period under CrR 3.3(g)(6) and possible dismissal with prejudice under CrR 3.3(i).

Because Petitioner State of Washington in this case made no effort to obtain Respondent Earl Joseph Anderson's presence for trial in the Snohomish County Superior Court after learning of his incarceration in a federal prison, the time spent by Respondent in federal prison is counted against the State by including it in calculating his CrR 3.3 right to trial within 60 or 90 days. That time limit was exceeded in this

---

[39] 120 Wn.2d 585, 845 P.2d 971 (1993).

case by more than 500 days,[40] and the burglary charge against him should have been dismissed with prejudice.[41]

Respondent Anderson, then held in a federal prison, made demands for a speedy trial which he filed with the Snohomish County Superior Court on March 23, 1989, and on May 18, 1989, with copies sent to the Snohomish County Prosecuting Attorney, who took no action. Due diligence required that the prosecuting authorities file a detainer under the IAD, RCW 9.100, where such a demand is made, so that Respondent could pursue his speedy trial remedies under that statute.

We therefore affirm the decision.of the Court of Appeals. CrR 3.3(g)(6), which excludes from the calculation of a defendant's CrR 3.3(d)(4) speedy trial period the time spent in a federal jail or prison, implicitly requires that prosecuting authorities act in good faith and exercise due diligence in attempting to obtain a defendant's presence for trial in the state of Washington where the defendant is known to be detained in jail or prison outside the state of Washington or in a federal jail or prison.

GUY, JOHNSON, and MADSEN, JJ., concur.

UTTER, J. (concurring) — I concur, and write separately to emphasize the majority's holding is consistent with prior case law and will not prove unduly burdensome to the prosecution.

The majority's resolution is consistent with the general purpose of the rule as explained by this court: "This. court has consistently interpreted CrR 3.3 so as to resolve ambiguities in a manner which supports the purpose of the rule in

---

[40]The Court of Appeals mandate was filed in the Snohomish County Superior Court on February 14, 1989. Clerk's Papers, at 68. Respondent's retrial began on October 29, 1990. Report of Proceedings vol. I, at 2. The elapsed time between the dates was 622 days.

[41]CrR 3.3(i).

providing a *prompt* trial for the defendant once prosecution is initiated." (Citations omitted.) *State v. Edwards*, 94 Wn.2d 208, 216, 616 P.2d 620 (1980).

The majority's disposition of the case will not result in imposing an additional burden on the State. It only affirms a requirement with which the prosecutor has had to comply for many years. *See, e.g., State v. Peterson*, 90 Wn.2d 423, 428, 585 P.2d 66 (1978).

Finally, the due diligence requirement is not onerous. All the prosecutor need do to satisfy the requirement is to make a reasonable effort to secure the defendant's presence before the court. *State v. Greenwood*, 120 Wn.2d 585, 600-02, 845 P.2d 971 (1993). *See also State v. Perry*, 25 Wn. App. 621, 612 P.2d 4 (1980). The due diligence requirement does not impose on the State the burden of locating defendants who have failed to provide accurate information of their whereabouts to the prosecution. *Greenwood*, 120 Wn.2d at 602. Thus,

> [L]aw enforcement agencies [are not required] . . . to physically go out and search the countryside for defendants who have either given the wrong address to the Court or who moved from that address without leaving forwarding information.

*Greenwood*, 120 Wn.2d at 602 (citing with approval *State v. Perry*, 25 Wn. App. at 623).

The dissent's point, that the terms of CrR 3.3(g)(6) are unambiguous and their plain meaning should therefore control, has some initial appeal. The difficulty, however, is that giving effect to the literal terms of CrR 3.3(g)(6) does violence to what we have stated is the rule's general purpose, assuring the defendant a prompt trial to the extent practicable. *See Greenwood*, 120 Wn.2d at 593-94; *Edwards*, 94 Wn.2d at 216. The strength of the majority's approach is that it avoids this awkward result, and respects the principle that court rules should be construed to further the purposes for which they were enacted. *Greenwood*, 120 Wn.2d at 593 (citing *In re McGlothlen*, 99 Wn.2d 515, 522, 663 P.2d 1330 (1983)).

The dissent's method of analysis is, moreover, inconsistent with a very recent case, *Greenwood*, decided only 5 months ago. In *Greenwood* we unanimously held, in the context of

CrR 3.3, that an intent to supersede case law will not be presumed unless the intent to supersede is *"necessarily implied"* from the change and the provisions of the original case are in *"irreconcilable conflict"* with the amendment. *See Greenwood*, 120 Wn.2d at 593.

The dissent construes CrR 3.3(g)(6) as an *absolute* exception to CrR 3.3. This leads the dissent to conclude the due diligence requirement and CrR 3.3(g)(6) are incompatible, indeed irreconcilable. More sensible, and consistent, is to treat CrR 3.3(g)(6) as a *qualified* exception to the rule, namely an exception qualified by the due diligence requirement. Understood as such, the rule operates as follows: The prosecutor has the burden of exercising due diligence to obtain the defendant even if he or she is in federal jail or prison or detained outside Washington. If, exercising such diligence, the defendant cannot be brought to trial within the specified period, then the time spent in federal custody or detention outside Washington will not count in the calculation of the speedy trial period.

This interpretation of CrR 3.3(g)(6) is consistent with recent case law and comports with the principle that the prosecutor should not be penalized for delays beyond its control. It also gives effect to the exception, while at the same time respecting the rule's basic rationale.

DURHAM, J. (dissenting) — CrR 3.3(g)(6) unambiguously excludes the time spent in federal prison from the calculation of time under CrR 3.3(d)(4). Nonetheless, the majority attempts to amend this rule by decisional law, rather than by following the normal rule-making procedure. It does this by extending the "good faith and diligent efforts" requirement of *State v. Peterson*, 90 Wn.2d 423, 428, 585 P.2d 66 (1978) to the CrR 3.3(g)(6) exception. In doing so, the majority ignores the plain and unambiguous language of CrR 3.3(g)(6), our rules of statutory interpretation, and the intent of this court in adopting the criminal rules. Thus, I dissent.

Although the criminal rules are not legislative enactments, but rather are promulgated by this court, our normal rules of statutory construction are still to be applied. *State v.*

*Greenwood*, 120 Wn.2d 585, 592, 845 P.2d 971 (1993). A bedrock principle of our approach to statutory construction is that when a rule is unambiguous, its meaning must be derived solely from its actual language. *State v. Smith*, 117 Wn.2d 263, 270-71, 814 P.2d 652 (1991). "The court has no power to insert new provisions into a rule that is plain on its face." *State v. Carmichael*, 53 Wn. App. 894, 896, 771 P.2d 364, *review denied*, 113 Wn.2d 1001 (1989). Neither the majority nor the respondent has made a showing of any ambiguity in CrR 3.3(g)(6), nor could they, as the rule is clear and unequivocal. The rule explicitly exempts from the speedy trial calculation the "time during which a defendant is detained . . . in a federal jail or prison . . .". CrR 3.3(g)(6).

Also overlooked by the majority are the principles that a legislative body is presumed to be aware of judicial interpretations of its enactments, *Friends of Snoqualmie Vly. v. King Cy. Boundary Review Bd.*, 118 Wn.2d 488, 496, 825 P.2d 300 (1992), and that a potential conflict between two statutory provisions is to be resolved by giving effect to the more specific and more recently enacted provision, *Morris v. Blaker*, 118 Wn.2d 133, 143, 821 P.2d 482 (1992). As the majority points out, the CrR 3.3(g)(6) exception was added to the rule in 1980, subsequent to the decision in *Peterson*. Majority, at 856. There is more than a mere presumption that *this court is aware of its own decisions* and would have specifically included a "good faith and diligent efforts" requirement in the CrR 3.3(g)(6) exception had it wished to do so.[42] The fact that we did not include such language in 1980 is nearly conclusive proof that such a requirement was never intended.

---

[42] To the extent that this exception may conflict with some of our pre-1980 decisions, the exception must be given precedence. *State v. Greenwood*, 120 Wn.2d 585, 593, 845 P.2d 971 (1993). As to the majority's citations to our post-1980 cases applying the "good faith and due diligence" requirement, these cases involved situations upon which the rules remained silent, and we had to decide whether a pre-amendment case continued to fill that gap. *State v. Pacheco*, 107 Wn.2d 59, 65-66, 726 P.2d 981 (1986); *Greenwood*, at 592-93. In the case at hand, CrR 3.3(g)(6) is specifically meant to deal with defendants incarcerated in a federal prison.

We adopted CrR 3.3's time limits specifically to avoid the uncertainty inherent in a case-by-case analysis. *State v. Edwards*, 94 Wn.2d 208, 213, 616 P.2d 620 (1980). The majority's amendment of our criminal rules to include a requirement of "good faith and diligent efforts" injects just such a measure of unnecessary ambiguity as we have attempted to avoid. Our criminal rules, which are intended to simplify criminal procedure, need no such qualification.[43] CrR 3.3(g)(6) is plain on its face and, applied to the facts of this case, mandates that we affirm the conviction entered by the Superior Court.

ANDERSEN, C.J., and BRACHTENBACH, J., concur with DURHAM, J.

Reconsideration denied September 1, 1993.

---

[43]A defendant incarcerated in another jurisdiction and aggrieved by the laxity of his prosecution is always free to bring a Sixth Amendment speedy trial claim. There has been no such claim here. A Sixth Amendment claim, which is independent of any claim under CrR 3.3, is the more appropriate arena for consideration of the prosecution's good faith and diligent efforts. *Smith v. Hooey*, 393 U.S. 374, 383, 21 L. Ed. 2d 607, 89 S. Ct. 575 (1969). *See also Barker v. Wingo*, 407 U.S. 514, 523, 33 L. Ed. 2d 101, 92 S. Ct. 2182 (1972) (rejecting precise time limits because constitutional speedy trial right cannot be quantified into a specified number of days).