[No. 38665-4-I.    Division One.    December 30, 1996.]

THE STATE OF WASHINGTON, *Respondent*, v. WILLIAM
TERRELL SIMON, *Appellant*.

*Office of Whatcom County Public Defender*, for appellant.

*David S. McEachran, Prosecuting Attorney*, and *Laura D. Hayes, Deputy*, for respondent.

COLEMAN, J. — William Simon argues that the lower court erred in denying his motion to dismiss armed robbery charges because the State violated his speedy trial

rights under CrR 3.3 and the Interstate Agreement on Detainers. We hold that the State's failure to inquire into Simon's whereabouts or ability to stand trial in Washington for nearly a year while Simon was in an Oregon prison and available for trial in Washington constitutes a failure to exercise the required due diligence. We therefore reverse and dismiss.

## Facts

On December 13, 1993, Simon was arrested in Douglas County, Oregon. California had three outstanding warrants on Simon and immediately placed a hold on him. Douglas County informed Whatcom County that Simon had a number of credit cards and identification belonging to victims of a Whatcom County armed robbery.

Detective Nick Childers of Whatcom County went to Oregon and interviewed Simon. After the interview, Childers informed Simon that Whatcom County would be pursuing robbery charges against him. Childers then also learned that Simon was facing more serious charges in California for which he faced a possible life sentence.

On January 6, 1994, Simon was charged with robbery in the first degree for the Whatcom County robbery. Whatcom County issued a warrant for Simon's arrest on January 11, 1994, and faxed it to the Douglas County sheriff's office. The fax asked the sheriff to place a hold on Simon and to advise if he would sign a waiver of extradition. There is, however, no evidence that Simon was notified of the warrant, and he later signed an affidavit stating that he was not informed of any outstanding warrant or that charges had actually been filed.

In late February 1994, Simon was convicted in Oregon and sentenced to 30 months in jail for charges arising out of his Douglas County arrest. Whatcom County learned this on March 15, 1994.

Because the California charges were more serious than Washington's, Whatcom County decided to defer to Cali-

fornia, permitting it to pursue its detainer on Simon first. The State intended to file a detainer in California if Simon received a lengthy sentence or in Oregon once the California matter had concluded.

On March 31, 1994, California filed a detainer against Simon. On April 2, 1994, Simon requested speedy disposition of this detainer and requested the Oregon authorities to inform him if there were any other detainers filed against him. At that time, there were no others.

In December 1994, Simon was transported to California, where the charges against him were dismissed. On December 29, 1994, he was returned to the Oregon Department of Corrections to finish serving his sentence.

From March 1994 to September 1995, there was no communication between Whatcom County and California or Oregon. Whatcom County therefore did not know that California had dismissed its charges and that Simon had returned to prison in Oregon. A September 1995 internal Whatcom County prosecutor's office memo specified an intention to extradite Simon whenever he was released or before his release.

On December 13, 1995, the Whatcom County sheriff's office requested the Oregon Department of Corrections to place a hold on Simon. Simon's scheduled release date from the Oregon prison was December 15, 1995.

The trial court concluded that the State acted in good faith and exercised due diligence in obtaining the presence of Simon, that deference to California was not a violation of its good faith and due diligence requirement, and that Simon had to stand trial in Whatcom County.

## Analysis

■ ■ The sole issue on appeal is whether the State exercised good faith and due diligence in obtaining Simon's presence for trial in Whatcom County. In computing the time for arraignment and the time for trial, the time during which a defendant is detained in out-of-state

or federal jail or prison is excluded. CrR 3.3(g)(6). The State must, however, exercise good faith and due diligence in attempting to return a defendant to Washington to avail itself of the exclusion. *State v. Anderson*, 121 Wn.2d 852, 858, 855 P.2d 671 (1993).

Under the Interstate Agreement on Detainers, when Washington has charges pending against prisoners held in another jurisdiction, it may file a detainer with that authority requesting that the prisoner not be released before resolution of the Washington charges. *Anderson*, 121 Wn.2d at 861; *see* RCW 9.100. After the detainer is filed, the prisoner may demand that Washington bring the prisoner to trial commencing within 180 days following the demand. RCW 9.100.010, Art. 3; *Anderson*, 121 Wn.2d at 861. While the prisoner cannot demand a speedy trial until the State files the detainer, the failure to file a detainer does not relieve the State of its obligation to comply with CrR 3.3 time limits. *State v. Peterson*, 90 Wn.2d 423, 431, 585 P.2d 66 (1978), *superseded by statute and rule, as stated in State v. Newcomer*, 48 Wn. App. 83, 737 P.2d 1285, *review denied*, 109 Wn.2d 1014 (1987). Rather, the State must still exercise good faith and due diligence in bringing the defendant to trial in order to avail itself of the CrR 3.3(g)(6) exclusion. *Anderson*, 121 Wn.2d at 857-58. The rationale is that permitting prosecutors to decline freely to file detainers would deprive defendants of a mechanism for demanding a speedy trial. And delays to trial could cause substantial prejudice to defendants, such as a diminished ability to prepare for trial and a lost ability to serve partially concurrent sentences. *Anderson*, 121 Wn.2d at 861-62.

Washington can defer to another state to file its detainer first while still complying with good faith and due diligence. *See State v. Pizzuto*, 55 Wn. App. 421, 425, 778 P.2d 42, *review denied*, 113 Wn.2d 1032 (1989). In *Pizzuto*, Washington agreed to subordinate its extradition request to Idaho's. The following year, Pizzuto was sentenced in Idaho. Washington officials asked Idaho authorities when

Pizzuto would be available to Washington and were told that his presence in Idaho was required for posttrial motions. *Pizzuto*, 55 Wn. App. at 423-25. After continued communication, King County lodged a detainer and transported Pizzuto to Washington. *Pizzuto*, 55 Wn. App. at 425. The court determined that the decision to subordinate its request to Idaho's did not show a lack of good faith and due diligence because the seriousness of the Idaho charges was a sound reason to defer to Idaho's request. *Pizzuto*, 55 Wn. App. at 432. The court also noted that when Washington defendants are involved in out-of-state criminal proceedings, there will be a substantial overlap between CrR 3.3(g)(6) and CrR 3.3(g)(2), which tolls speedy trial for preliminary proceedings and trial on another charge. *Pizzuto*, 55 Wn. App. at 431-32. The court held that when CrR 3.3(g)(6) is applied to exclude time periods not excluded under CrR 3.3(g)(2), the defendant's availability must be tested under good faith and due diligence. *Pizzuto*, 55 Wn. App. at 432.

██ Here, the time during which Simon was undergoing proceedings in California is excluded by CrR 3.3(g)(2). But after December 1994, Simon was available to stand trial for nearly a year before his release date. To avail itself of the CrR 3.3(g)(6) exclusion, the State must have exercised good faith and due diligence in attempting to bring Simon to trial in Washington. Here, we hold that it did not. While it is not a violation of good faith a due diligence for the State to defer to another jurisdiction, *Pizzuto*, 55 Wn. App. at 432, the State must still exercise good faith and due diligence in attempting to secure the defendant's presence once the defendant has finished proceedings in the other state and the CrR 3.3(g)(2) exclusion no longer applies. Unlike here, the State in *Pizzuto* was in close contact with Idaho, and the defendant's Idaho appeals were proceeding. Thus, much of the relevant time was excluded under CrR 3.3(g)(2). *See Pizzuto*, 55 Wn. App. at 431-32. By contrast, the State here made no attempt to contact either Oregon or California for nearly a year after

proceedings in California had terminated. Because the State failed to make a single inquiry, it has not availed itself of the CrR 3.3(g)(6) exclusion.

The State relies on *State v. Syrotchen*, 61 Wn. App. 261, 266, 810 P. 2d 64, *review denied*, 117 Wn.2d 1014 (1991), where the court stated that the State is not responsible for tracking a prisoner's process through the federal system. *Syrotchen*, 61 Wn. App. at 266. But in *Syrotchen*, the State instituted proceedings within a month after federal authorities removed the defendant to Colorado. *Syrotchen*, 61 Wn. App. at 266. By contrast, the State here did not make any inquiries into Simon's availability for nearly a year after the California charges had been resolved. While a month may be a feasible amount of time to locate a prisoner, over a year—without a single inquiry—is not.

The State also argues that it satisfied due diligence by telling Simon that it intended to charge him and by sending a faxed warrant to Douglas County. The State also attempts to distinguish *Anderson* on the basis that defendant there had made several requests for a speedy trial. *See Anderson*, 121 Wn.2d at 854. But it is only after the lodging of a formal detainer that the defendant can request a trial commencing within 180 days. *See* RCW 9.100.010, Art. 3. Since Washington never filed one, Simon had no means of exercising his speedy trial rights.

We hold that after the State has properly deferred to another jurisdiction and after the CrR 3.3(g)(2) exclusion no longer applies, *Anderson*'s good faith and due diligence requirement includes the duty to inquire into defendant's availability to stand trial in Washington. *See Anderson*, 121 Wn.2d at 864. While we do not delineate the perimeters of what acts constitute due diligence, the failure to make any inquiries for nearly a year after defendant was available to stand trial is not. We reverse and dismiss.

BAKER, C.J., and ARMSTRONG, J. Pro Tem., concur.